**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|                                              |   |                          |
|----------------------------------------------|---|--------------------------|
|                                              | * |                          |
| **CONGRESSIONAL BANK,**                      | * |                          |
|                                              |   |                          |
| **Plaintiff,**                               | * |                          |
| **v.**                                       |   | **Case No.: PWG-13-889** |
|                                              | * |                          |
| **POTOMAC EDUCATIONAL**                      |   |                          |
| **FOUNDATION, INC.,**                        | * |                          |
| **F/K/A UNIVERSITY OF FAIRFAX,**             |   |                          |
| **INC.,** *et al.,*                          | * |                          |
|                                              |   |                          |
| **Defendants.**                              | * |                          |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

This Memorandum Opinion addresses two motions to dismiss that are pending in this

case.   Defendant Vienna Educational Services, Inc. f/k/a University of Fairfax, Inc.

("University")[1] and Defendants Christopher Feudo, Thomas Sapienza, William Solomon, and

David Oxenhandler, members of the University's Board of Directors[2] whom I will refer to

collectively as the "Director Defendants," filed a Motion to Dismiss Amended Complaint

("University's Motion to Dismiss"), ECF No. 17, along with an accompanying memorandum

("University's Memorandum"), ECF No. 17-1.  Plaintiff Congressional Bank filed an Opposition

to the University's Motion to Dismiss, ECF No. 19; and the University and the Director

---

[1] At the time Plaintiff filed suit, the University's name was Potomac Educational Foundation. Univ.'s Mem. 1 n.1.  It is located in Vienna, Virginia.  *See* Docket; Am. Compl. 1, ECF No. 12.

[2] Univ.'s Mem. 3; Am. Compl. ¶¶ 2–6.  Mr. Feudo, a Virginia resident, is President of the University.  Am. Compl. ¶ 3.  Mr. Solomon also is a Virginia resident and "was the Treasurer of the University until July 2012."  *Id.* ¶ 5.  Mr. Oxenhandler, also a Virginia resident, "was the President of the University at all relevant times through June 2012."  *Id.* ¶ 6.  Mr. Sapienza is a resident of Texas.  *Id.* ¶ 4.

Defendants filed an Amended Reply, ECF No. 23-1.  Defendants Richard L. Hendershot, CPA, PC (the "Accounting Firm") and Richard L. Hendershot (together, the "Accountant Defendants") filed a Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction ("Accountant Defendants' Motion to Dismiss"), along with a supporting memorandum ("Accountant Defendants' Memorandum"), ECF No. 18.  Plaintiff filed an Opposition to the Accountant Defendants' Motion to Dismiss, ECF No. 20; and the Accountant Defendants filed a Reply, ECF No. 21.   I find that a hearing is unnecessary in this case.  *See* Local Rule 105.6. For the reasons stated below, the University's Motion to Dismiss is GRANTED IN PART and DENIED IN PART, the Accountant Defendants' Motion to Dismiss is DENIED, and this case is TRANSFERRED to the United States District Court for the Eastern District of Virginia.

## I.   BACKGROUND[3]

In this lawsuit, Plaintiff alleges that, on April 4, 2012, it entered into a loan agreement ("Loan Agreement 1") and a promissory note ("Note 1"), under which it loaned the University $400,000, and a second loan agreement ("Loan Agreement 2") and promissory note ("Note 2"), under which it loaned the University an additional $600,000.  Am. Compl. ¶¶ 21–34, ECF No. 12.  On the same date, Plaintiff "secured Loan 1 and Loan 2 with the assets of the University pursuant to Security Agreements."  *Id.* ¶ 37.  Plaintiff claims that it entered into these agreements (collectively, the "Loan Documents") in reliance on "financial statements for the University valuing its accounts receivable, training system licenses and other assets" that the Accountant Defendants and the Director Defendants "prepared and/or approved," *id.* ¶ 82, including an "Independent Auditor[s'] Report" for 2010 ("2010 Audit") that the Accountant Defendants

---

[3] For purposes of considering Defendants' Motions, this Court accepts the facts that Plaintiff alleged in its Complaint as true.  *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011).

prepared "as part of the University's application to acquire loans from the Bank," *id.*  ¶ 86; *see id*. ¶ 120. According to Plaintiff, the 2010 Audit included "materially inaccurate" valuations of the University's assets.  *Id.* ¶ 87.  Plaintiff alleges that the Director Defendants "negligently represented the value of the assets of the University to the Bank," *id.* ¶ 84, and the Accountant Defendants "through the 2010 Audit . . . represented to the Bank that [the University] was solvent," *id.* ¶ 90; *see id.* ¶¶ 126–34.  Additionally, according to Plaintiff, all of the Defendants failed to "disclose to the Bank that the purported 'grants' of income identified on [the University's] financial statements, upon which the Bank relied, came from undercapitalized entities related to the Board of Directors and officers of the University."  *Id.* ¶ 89.  Also, Plaintiff claims that the Director Defendants "knew or should have known of the conflict of interests" that Solomon and Feudo had, as each was not only on the University's board but also president of one of the "undercapitalized entities" that "purported to give monetary grants" to the University. *Id.* ¶¶ 83, 89, 91.

Plaintiff alleges that "[i]n November of 2012, the University had insufficient capital and was not paying bills as they became due," so, "[o]n December 14, 2012, the Bank sent a Notice of Default under the Loan Documents," Am. Compl. ¶¶ 41–42, but the University "failed to timely cure the default under the Loan Documents," *id.* ¶ 45.  Plaintiff filed a three-count complaint, alleging that the University was liable for breach of contract and negligence, and that Mr. Hendershot and the Director Defendants were liable for negligence.  *See* Compl., ECF No. 1. The Accountant Defendants, who are Virginia residents, moved to dismiss for lack of personal jurisdiction.  Accountant Defs.' 1st Mot. to Dismiss & Mem. in Support 1–2, ECF No. 11.  In response, Plaintiff amended its complaint, bringing claims of breach of contract against the University and the Director Defendants and claims of negligence against all Defendants.  *See*

Am. Compl.  In its Amended Complaint, Plaintiff identifies Richard L. Hendershot as "a certified public accountant licensed to practice accounting in the State of Maryland" and "Richard L. Hendershot, CPA, P.C., t/a Hendershot, Burkhardt and Reeds, CPAs," as an accounting firm that "is organized under the laws of the Commonwealth of Virginia and upon information and belief contracts to do business in the State of Maryland, performs services in the State of Maryland and performs accounting services for Maryland clients based on the license of Accountant." *Id.* ¶¶ 2–8.

Plaintiff claims that this Court has personal jurisdiction over the University because the University "agreed that it accepted Loan Agreement 1 and Loan Agreement 2 in the State of Maryland" and "consented to jurisdiction in any state or federal court sitting in the State of Maryland [regarding any dispute] arising under Note 1, Loan Agreement 1, Note 2 and Loan Agreement 2." *Id.* ¶ 12; *see id.* ¶ 36.  Plaintiff also claims that this Court has personal jurisdiction over the Director Defendants "under the Maryland long arm statute by virtue of their connection to the University and the scheme to defraud the Bank in Maryland," and the fact that the Director Defendants "have sufficient contacts with the State of Maryland." *Id.* ¶¶ 13–14. Neither the University nor the Director Defendants challenge this Court's personal jurisdiction over them.  *See* Univ.'s Mot. to Dismiss.

As for the Accountant Defendants, Plaintiff claims that "[t]his Court has personal jurisdiction over the Accountant and the Accounting Firm under the Maryland long arm statute by virtue of their transaction of business, performance of work and services and their contracting to supply services in the State of Maryland," and that "[t]he Accountant, licensed to practice in Maryland, and the Accounting Firm have sufficient contacts with the State of Maryland for the Court to exercise jurisdiction."  Am. Compl. ¶¶ 15–16.

## II.  PERSONAL JURISDICTION

When a defendant challenges this Court's personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the jurisdictional question "'is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence.'" *Fyfe Co., LLC v. Structural Grp., LLC*, No. CCB-13-176, 2013 WL 2370497, at *2 (D. Md. May 30, 2012) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)).  If the Court considers the complaint, the parties' briefings, and accompanying affidavits but does not conduct an evidentiary hearing, then "'the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)); *see Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009)).  The Court "'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'"  *Fyfe Co.*, 2013 WL 2370497, at *2 (quoting *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (citation and quotation marks omitted)).  Yet, "the Court need not 'credit conclusory allegations or draw farfetched inferences.'"  *Tharp v. Colao*, No. WDQ-11-3202, 2012 WL 1999484, at *1 (D. Md. June 1, 2012) (quoting *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000)).

Personal jurisdiction may be either general or specific.  *Tawney v. AC & R Insulation Co., Inc.*, No. WDQ-13-1194, 2013 WL 5887625, at *2 (D. Md. Oct. 30, 2013); *see Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 699 (D. Md. 2012).

> To exercise general jurisdiction over a defendant, the defendant's activities in the state must be "continuous and systematic." *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). If the cause of action arises out of the defendant's minimum contacts with the forum, the court may exercise specific jurisdiction. . . . In determining whether the exercise of specific jurisdiction comports with due process, a court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff['s] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst of Md., Inc.*, 334 F.3d at 397.

*Tawney*, 2013 WL 5887625, at *2 (footnotes omitted).

Although less contact is required with the forum state for specific jurisdiction than for general jurisdiction, *see ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623–24 (4th Cir. 1997), both forms of jurisdiction "require[] that the defendant purposefully avail itself of the privilege of conducting activities within the forum state," *Tawney*, 2013 WL 5887625, at *2 (footnote omitted).  Thus, whether a federal court may exercise personal jurisdiction is a two-part analysis: "[A] district court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute, and (2) the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment."  *Id.* (citing *Carefirst of Md., Inc.*, 334 F.3d at 396).  The Maryland long-arm statue is "coextensive with the scope of jurisdiction allowable by due process."  *Id.* (citing *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 486 (Md. 2006)).  Nonetheless, "'the Court must address both elements in the personal jurisdiction analysis.'"  *Id.* (quoting *Metro. Reg'l Info. Sys.*, 888 F. Supp. 2d at 698.

### A.  Long-Arm Jurisdiction

For this Court to exercise jurisdiction, Plaintiff's claim against the Accountant Defendants must "aris[e] from an[] act enumerated in" the Maryland long-arm jurisdiction statute. Md. Code Ann., Cts. & Jud. Proc. § 6-103(a).  Maryland's statute provides:

6

A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Cts. & Jud. Proc. § 6-103(b).   The "statutory provision authorizing jurisdiction" must be identified in the complaint.  *Tawney*, 2013 WL 5887625, at *2 (citing *Metro. Reg'1 Info. Sys.*, 888 F. Supp. 2d at 698).

Plaintiff does not reference any of the subsections of Cts. & Jud. Proc. § 6-103(b) explicitly in its Amended Complaint.  Yet, Plaintiff uses the language of Cts. & Jud. Proc. § 6-103(b)(1) and (2) to allege that the Accountant Defendants "transact[] business, perform[] work and services and . . . contract[] to supply services in the State of Maryland."  Am. Compl. ¶ 15. Also, in opposition to the Accountant Defendants' Motion to Dismiss, Plaintiff argues that "the cause of action arises out of, and is related to, the Accountant and the Accounting Firm's preparation of the Reports and the Misrepresentations therein which they knew would be relied upon by the Bank, a Maryland Bank for a Maryland loan transaction."   Pl.'s Opp'n to Accountant Defs.' Mot. 9.   The Accountant Defendants insist that they "were retained

specifically by the University, which is located in Virginia, to prepare the audits," [4] that they did not deliver the audits to Plaintiff or have "any contacts with Plaintiff or anyone else in Maryland in preparing these audits," and that Plaintiff does not allege otherwise. *Id.* at 12–13.  In their view, Plaintiff's allegation that the Accountant Defendants knew that the Bank would rely on the 2010 Audit and that such reliance would cause injury in Maryland is insufficient for purposes of establishing jurisdiction because it "is conclusory . . . . and, more importantly, this allegation incorrectly presumes that Maryland courts can exercise jurisdiction for claims not arising from defendant's contacts with Maryland, so long as Plaintiff's injury occurred in Maryland." *Id.* at 13.  The Accountant Defendants insist, to the contrary, that the Court of Appeals of Maryland has made clear "'that the "effect of the injury" analysis "is not a sufficient benchmark for exercising personal jurisdiction."'" *Id.* (quoting *Bond v. Messerman*, 895 A.2d 990, 1005 (Md. 2006) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–76 (1985))).

As proof of the Accountant Defendants' contact with Maryland, Plaintiff offers the Loan Documents.  Loan Docs., Pl.'s Opp'n to Accountant Defs.' Mot. Ex. 1, ECF No. 20-1.  However, the Loan Documents do not demonstrate that Mr. Hendershot or the Accounting Firm provided services in Maryland or contracted to provide services in Maryland, as neither is party to, nor even mentioned in, the Loan Documents.  *See* Cts. & Jud. Proc. § 6-103(b)(1)-(2).  Moreover, Plaintiff does not claim that the Accountant Defendants communicated with Plaintiff about the 2010 Audit, such that the 2010 Audit could be construed as services performed for a Maryland company.  Rather, Plaintiff acknowledges that the Accountant Defendants communicated with

---

[4] The Accountant Defendants prepared an "Independent Auditors' Report" for the University for 2010 and 2011, *see* Independent Auditors' Reports, Pl.'s Opp'n to Accountant Defs.' Mot. Ex. 2, ECF No. 20-2, but Plaintiff only refers to the 2010 Audit in its Amended Complaint.  *See* Am. Compl.  In any event, the Accountant Defendants did not prepare the 2011 Independent Auditors' Report until June 20, 2012, *see* Independent Auditors' Reports 14, more than two months after Plaintiff entered into the Loan Documents, *see* Am. Compl. ¶¶ 21–34.

the University.  *See* Am. Compl. ¶ 82.    Further, Plaintiff does not allege in its Amended

Complaint that the Accountant Defendants transacted any other business in Maryland.  Thus,

Plaintiff has not made a *prima facie* showing of specific jurisdiction under Cts. & Jud. Proc. § 6-

103(b)(1) or (2).    Also, Plaintiff neither alleges nor argues that the Accountant Defendants'

actions were sufficient to confer specific jurisdiction under Cts. & Jud. Proc. § 6-103(b)(3), (5),

or (6).

Plaintiff also appears to attempt to establish jurisdiction under Cts. & Jud. Proc. § 6-

103(b)(4), without identifying the statute in its pleading.  This two-part subsection requires that

the defendant both (1) causes injury in Maryland by "an act or omission" outside Maryland, and

(2) "regularly do[] or solicit[] business, engage[] in any other persistent course of conduct in the

State or derive[] substantial revenue from goods, food, services, or manufactured products used

or consumed in the State."  Cts. & Jud. Proc. § 6-103(b)(4).  Jurisdiction under this subsection is,

at a minimum, specific, but has been found by some judges to have the attributes of general

jurisdiction.[5]   Either way, § 6-103(b)(4) "'require[s] greater contacts that those necessary to

---

[5] *See Gimer v. Jervey*, 948 F.2d 1280, 1991 WL 237931, at *3 (4th Cir. 1991) ("The 'long-arm' jurisdiction of § 6-103(b)(4) which Gimer is asserting in this case involves general jurisdiction because the cause of action does not arise out of Jervey's contacts with Maryland."); *Mycosafe Diagnostics GMBH v. Life Techs. Corp.*, No. DKC-12-2842, 2013 WL 145893, at *4–5 (D. Md. Jan. 11, 2013) (noting that "'[s]ubsection (b)(4) has been construed by the Maryland courts as a general jurisdiction statute," such that the plaintiff's cause of action only needs to arise from the out-of-state act referenced in (b)(4), "*not* the conduct enumerated in the latter portion of the provision (i.e., regularly doing or soliciting business, engaging in any other persistent course of conduct, or deriving substantial revenue from services performed in the State)" (quoting *Tech. Patents, LLC v. Deutsche Telkom AG*, 573 F. Supp. 2d 903, 912 n.11 (D. Md. 2008)); *Cox v. Ritz-Carlton Hotel Co. of Mexico, S.A. de C.V.*, No. RDB-05-2556, 2006 WL 3313773, at *3 (D. Md. Nov. 9, 2006) ("§ 6-103(b)(4) . . . authorizes general jurisdiction."); *Rist v. Xcentric Ventures, LLC*, No. MJG-12-3660, 2013 WL 2946762, at *3 n6 (D. Md. June 12, 2013) ("§ 6-103(b)(4) . . . satisfies general jurisdiction."); *cf. Metro. Reg'l Info. Sys.*, 888 F. Supp. 2d at 698 ("Establishing a 'persistent course of conduct' under section 6–103(b)(4) is 'not tantamount to establishing general jurisdiction, but it does require greater contacts that those necessary to establish jurisdiction under [section 6–103(b)(1)].'" (quoting *American Ass'n of Blood Banks v.*

establish jurisdiction under [other subsections of Maryland's long-arm statute].'" *Metro. Reg'l Info. Sys.*, 888 F. Supp. 2d at 698 (quoting *American Ass'n of Blood Banks v. Bos. Paternity, LLC*, No. 2008–2046, 2009 WL 2366175, at *8 (D. Md. July 28, 2009))).

Plaintiff argues that Mr. Hendershot is "licensed to practice in Maryland" and, in conclusory terms, that the Accountant Defendants generally "have sufficient contacts." Am. Compl. ¶ 16. But, Plaintiff also alleges that the Accountant Defendants negligently prepared the 2010 Audit and provided it to the University, which, in turn, provided it to Plaintiff, and Plaintiff relied on to its detriment, Am. Compl. ¶¶ 86, 90, 126–34. Because the Accountant Defendants prepared and provided the 2010 Audit in Virginia, Plaintiff's Amended Complaint could be construed to allege that the Accountant Defendants committed an act outside of Maryland that caused Plaintiff's injury in Maryland, satisfying the first prong of this subsection. *See* Cts. & Jud. Proc. § 6-103(b)(4).

Additionally, in opposition to the Accountant Defendants' Motion to Dismiss, Plaintiff contends that the Accountant Defendants "have extensive contacts with the State of Maryland," based on the fact that "[t]hey comply with the numerous requirements of the State of Maryland to be licensed as a CPA and a CPA Corporation; they maintain active licenses in the State; and they regularly conduct business in the State." Pl.'s Opp'n to Accountant Defs.' Mot. 10. In support, Plaintiff attaches pages[6] from the Maryland Department of Labor, Licensing and

---

*Bos. Paternity, LLC*, No. 2008–2046, 2009 WL 2366175, at *8 (D. Md. July 28, 2009))); *Strong Pharma. Labs., LLC v. Trademark Cosmetics, Inc.*, No. RDB-05-3427, 2006 WL 2033138, at *6 (D. Md. July 17, 2006) ("Defendant is incorrect, however, that a claim based on § 6–103(b)(4) of the Maryland long arm statute must be based solely on general jurisdiction. Although claims under § 6–103(b)(4) require greater contacts than those necessary for claims under §§ 6–103(b)(1)–(2), the level is distinct from that required for general jurisdiction.").

[6] Plaintiff does not provide an affidavit with its exhibits, but Defendants do not challenge their authenticity or admissibility.

Regulation's website, establishing that Mr. Hendershot and the Accounting Firm are licensed to practice in Maryland.  *Id.* Exs. 3 & 5, ECF Nos. 20-3 & 20-5.  As further support, Plaintiff references the Accounting Firm's website, as well as the requirements for obtaining and maintaining a CPA license and "CPA Corporation" permit in Maryland.  *Id.* at 5 n.10 (citing Md. Code Ann., Bus. Occ. & Prof. § 2-312) & Exs. 4 & 6, ECF No. 20-4 & 20-6.  Plaintiff insists that "[t]he only believable reason" for maintaining a Maryland CPA license "is to conduct business as a CPA in the State of Maryland for Maryland clients."  *Id.* at 5 & 7–8.

Mr. Hendershot's professional licensure and the Accounting Firm's permit establish that they *may* conduct business in Maryland; the licenses do not show that they *have*, or that they *do*. As explained below, under the facts of this case, the mere fact that they have a license here is not enough to establish long-arm jurisdiction.  Additionally, the website does not show that Mr. Hendershot practices in Maryland; it only states that he "is licensed to practice in . . . Maryland." Accounting Firm Website 1, Pl.'s Opp'n to Accountant Defs.' Mot.  Ex. 4, ECF No. 20-4. Similarly, the requirements for licensure do not demonstrate that Mr. Hendershot practices in Maryland or comes to Maryland to attend continuing education courses.  To the contrary, Mr. Hendershot states in an affidavit that he fulfills all of his continuing education requirements outside of Maryland and received his "Maryland Reciprocal CPA License" based on his Virginia CPA license and the fact that he "met educational, examination, and experience requirements that were substantially equivalent to those then required by the laws of Maryland."  Hendershot Aff. ¶¶ 5–6, Defs.' Reply Ex. A, ECF No. 21-1.

Plaintiff bases its argument that the Accounting Firm conducts business in Maryland on its belief that the Accountant Defendants must have maintained an office in Maryland to have received a Maryland CPA Corporation permit.  Pl.'s Opp'n to Accountant Defs.' Mot. 6–7.  Yet,

Plaintiff has not alleged as much in its Amended Complaint, despite the fact that Plaintiff amended in response to the Accountant Defendants' first jurisdictional challenge.   And, according to the Accountant Defendants, the Accounting Firm "never had any office or place of business in Maryland" and their permit is an "'Out of State Business Permit', which is available to firms without any offices or physical presence in Maryland."  Accountant Defs.' Reply 2–3. More significantly, Mr. Hendershot states in his affidavit that the Firm does not have, and never has had, an office in Maryland.  Hendershot Aff. ¶ 3.  Indeed, the permit that, in Plaintiff's view, demonstrates that the Accountant Defendants have an office in Maryland is in reality an out-of-state permit for which a firm need not have an office in Maryland.  *See id.* ¶ 4 & Exs. A-1 & A-2, ECF Nos. 21-2 & 21-3.

Nonetheless, it is noteworthy that Mr. Hendershot obtained and maintains his Maryland CPA license and the Accounting Firm obtained and maintains its Maryland CPA Corporation permit.  While it would not be unreasonable to infer that having a Maryland licensure enabled the Accountant Defendants, whose office is a short drive from the Maryland border,[7] to seek and provide services in Maryland, that inference is not dispositive.  Indeed, they advertise as much on their website by stating that Mr. Hendershot "is licensed to practice in . . . Maryland." Accounting Firm Website 1.  But, significantly, "the alleged tort giving rise to this suit"—the Accountant Defendants' preparation and presentation of the 2010 Audit—"bears no relation to [their] contacts within Maryland," i.e., their Maryland licenses and advertising.  *See Rossetti v. Esselte-Pendeflex Corp.*, 683 F. Supp. 532, 533 (D. Md. 1988).  In this regard, *Rossetti*, 683 F. Supp. 532, is instructive.

---

[7] I take judicial notice of this fact pursuant to Fed. R. Evid. 201.

Rosetti, a Pennsylvania resident, was injured on the defendant's business premises in California. *Id.* at 533. He and his wife brought a tort claim in this Court, and the defendant, a New York corporation, moved to dismiss for lack of personal jurisdiction. *Id.* In support, the defendant submitted affidavits from its corporate officers that established that, at the time of the injury,

> the defendant did not maintain an office, sales personnel, inventory, or a telephone listing in Maryland. Nor did defendant conduct any research or development operations in this state. The affidavits also indicate that, to date, defendant had not possessed any real property or bank accounts in Maryland, has not filed any Maryland income tax returns, has not operated under any Maryland license, and has not qualified as a foreign corporation to do business in Maryland.

*Id.* The Court observed that "Defendant's only contacts with Maryland seem to consist of general advertising in trade journals, some of which have circulation in Maryland, and sales to persons in Maryland," comprising less than 2% of the corporation's sales in the year of the injury. *Id.* Thus, the defendant's contacts with Maryland were unrelated to the plaintiff's tort claim. *See id.* The Court concluded that the contacts were insufficient for the Court to exercise jurisdiction over the defendant, reasoning:

> When jurisdiction is asserted over a claim which does not arise out of a defendant's contacts with the forum state, the defendant's contacts with that forum must be " 'fairly extensive before the burden of defending a suit there may be imposed upon it without offending "traditional notions of fair play and substantial justice." ' " *Wolf v. Richmond County Hospital Authority*, 745 F.2d 904, 909 (4th Cir. 1984), (Chapman, J.) (quoting *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971)). In assessing the quality of defendant's contacts in such cases, a more stringent standard must be applied than in cases where the plaintiff's cause of action arises directly out of defendant's contacts with the forum state.

*Rossetti*, 683 F. Supp. at 534 (some citations omitted).

More recently, this Court has stated that "[w]hen '[t]he contacts listed in [sub]section (b)(4) ... [do] not arise from or relate to the plaintiff[s'] cause of action,' 'the defendant's

contacts to the forum must be extensive, continuous, and systematic.'" *Tharp v. Colao*, No. WDQ-11-3202, 2012 WL 1999484, at *2 (D. Md. June 1, 2012) (footnotes citing *Bass v. Energy Transp. Corp.*, 787 F. Supp. 530, 534 (D. Md. 1992), and *Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 236 (D. Md. 1992), omitted).   Indeed, "Maryland courts have refused to exercise jurisdiction under this provision even when defendants have engaged in extensive electronic communications with someone in Maryland, operated a website used by Maryland residents, or advertised in Maryland." *Id.* (footnotes omitted) (citing *Gallman v. Sovereign Equity Grp., Inc.*, Case No. AW–11–2750, 2012 WL 983937, at *6 (D. Md. March 21, 2012) (holding that electronic and telephone communications with Maryland resident over the course of six months did not constitute a persistent course of conduct in Maryland when the "larger transaction . . . only tangentially involved Maryland"); *Allcarrier Worldwide Servs., Inc. v. United Network Equip. Dealer Ass'n*, 812 F. Supp. 2d 676, 683–84 (D. Md. 2011) (holding that the fact that defendant's membership included Marylanders and its website was accessible in Maryland were insufficient to establish a persistent course of conduct in Maryland when there was no showing that the defendant actively recruited Marylanders or derived substantial revenue from Maryland); *Camelback Ski Corp. v. Behning*, 539 A.2d 1107 (Md. 1988) (holding that sending a representative to Maryland once, mailing brochures to Maryland upon request, appearing in a commercial publication circulated in Maryland, and maintaining a toll-free number that Marylanders could use did not establish a persistent course of conduct in Maryland); and *Jafarzadeh v. Feisee*, 776 A.2d 1, 3–4 (Md. Ct. Spec. App. 2001)).   Importantly, in *Jafarzadeh*, even though the defendant, a Virginia doctor, was licensed in Maryland, advertised in a publication distributed in Maryland, and received a minimal amount in Maryland Medicaid payments during a two-year period, the court concluded that it could not exercise jurisdiction

over him because he did not engage in a persistent course of conduct in Maryland.  776 A.2d at 3–4.

Tharp, 2012 WL 1999484, also provides guidance.  Michael Tharp and his wife brought a negligence action against Christopher Colao after a tire fell off of Colao's truck and struck Tharp's car, severely injuring Tharp.  *Id.* at *1.  Tharp sought to amend the complaint to add as a defendant TNT Suzuki and Marine Sales and Service ("TNT"), a Montana car dealership that sold the truck to Colao.  *Id.*  This Court granted the motion, and TNT moved for reconsideration on jurisdictional grounds.  *Id.*  The Court observed that TNT operated its automotive business "only in the Billings, Montana area" and maintained a website on which customers could "view TNT's inventory, ask TNT to locate a car for them, apply for an auto loan, and schedule auto service."  *Id.*  The Court stated that internet activity only gave rise to jurisdiction when it is "(1) direct[ed] . . . into the State, (2) with the manifest intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person with the State, a potential cause of action cognizable in the State's courts."  *Id.* at *3.  Further, "[w]hen the Internet activity involves posting information on a website, the question is whether the defendant 'manifested an intent to direct [his] website content ... [to the forum state's] audience.'"  *Id.* (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002)).  The Court concluded that it lacked personal jurisdiction over TNT because "solicit[ing] business on [a] website, which Maryland citizens might have accessed . . . . does not establish a *prima facie* case for personal jurisdiction," and, in any event, "the defendant's 'web presence ... is immaterial' when . . . the allegedly tortious conduct is unrelated to the website."  *Id.* (quoting *Windsor v. Spinner Indus. Co., Ltd.*, 825 F. Supp. 2d 632, 639 (D. Md. 2011)).

Here, as noted, the contacts Plaintiff identified that could give rise to jurisdiction under Cts. & Jud. Proc. § 6-103(b)(4) are the Accountant Defendants' licensure in Maryland and the statement on their website that Mr. Hendershot is licensed to practice in Maryland. As for the internet activity, although it is likely that the statement was directed at Maryland residents, it did not "create[] . . . a potential cause of action" that the Maryland courts would recognize. *See Tharp*, 2012 WL 1999484, at *3. Further, this Court repeatedly has concluded that more extensive electronic contacts or advertising efforts were insufficient to confer jurisdiction. *E.g.*, *Gallman*, 2012 WL 983937, at *6; *Allcarrier Worldwide Servs.*, 812 F. Supp. 2d at 683–84; *Camelback Ski Corp.*, 539 A.2d 1107. Moreover, as discussed, "the allegedly tortious conduct is unrelated to the website," and therefore, the Accountant Defendants' "'web presence ... is immaterial.'" *See Tharp*, 2012 WL 1999484, at *3 (quoting *Windsor*, 825 F. Supp. 2d at 639).

With regard to the licensure, Plaintiff has not identified any authority for the proposition that a professional license alone is sufficient to confer general jurisdiction, and my independent research has not uncovered any. Rather, in *Jafarzadeh*, the Virginian defendant doctor not only had a professional licensed in Maryland, but also advertised in Maryland and received minimal payments from Maryland Medicaid, yet the court found the defendant's contacts insufficient for the court to exercise personal jurisdiction over him. 776 A.2d at 3–4. And in *Hughes v. Alexandria Scrap Corporation*, 426 U.S. 794 (1976), where the Supreme Court noted that this Court found that a Virginia corporation would be subject to personal jurisdiction in Maryland even though it "carrie[d] on no active business inside Maryland," the foreign company not only

had "paid a fee to become licensed under Maryland law," but also "*maintain[ed] an office in Maryland* as required by Maryland regulation." 426 U.S. at 811 n.21 (emphasis added).[8]

Moreover, because the alleged tort is unrelated to the internet statement or licensure, these contacts with Maryland "'must be extensive, continuous, and systematic.'" *Tharp*, 2012 WL 1999484, at *2 (citation omitted); *see Rossetti*, 683 F. Supp. at 534. The licensure may be continuous, but even taking the facts in the light most favorable to Plaintiff, *see Fyfe Co., LLC v. Structural Grp., LLC*, No. CCB-13-176, 2013 WL 2370497, at *2 (D. Md. May 30, 2012), Plaintiff has not shown that it constitutes either an extensive or a systematic contact, especially given that the Accountant Defendants have never exercised their right to provide services in Maryland or to Maryland residents. *See Tharp*, 2012 WL 1999484, at *2; *Rossetti*, 683 F. Supp. at 534. Therefore, Plaintiff has not shown that this Court may exercise either general or specific personal jurisdiction over the Accountant Defendants.[9]

### B.  Transfer to Another District Court

Although this Court cannot exercise jurisdiction over the Accountant Defendants, it has the discretion to "transfer [the case] to another district court pursuant to 28 U.S.C. § 1406(a) . . . . if doing so is in the interests of justice." *Robbins v. Yutopian Enters.*, 202 F. Supp. 2d 426, 430 (D. Md. 2002); *see Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of

---

[8] *Hughes* had a different posture because the scrap metal processor brought suit and therefore jurisdiction over it was not at issue; the Court considered the reach of long-arm jurisdiction to inform its decision with regard to whether the Virginia corporation could "claim the protection of the Fourteenth Amendment, which prohibits a State's denial of equal protection to persons 'within its jurisdiction.'" 426 U.S. at 811 n.21.

[9] Because Maryland's long-arm statute does not authorize this Court to exercise jurisdiction, I need not consider whether "the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment." *See Tawney v. AC & R Insulation Co., Inc.*, No. WDQ-13-1194, 2013 WL 5887625, at *2 (D. Md. Oct. 30, 2013).

§ 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.").  Section 1406(a) permits the transfer of a case "to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  I am mindful that the Loan Documents state that "Borrower [i.e., the University] irrevocably submits to the jurisdiction of any state or federal court sitting in the State of Maryland over any suit, action, or proceeding arising out of or relating to this Agreement [or Note]."  Loan Agr. 1, at 5; Loan Agr. 2, at 5; Note 1, at 2; Note 2, at 2, Pl.'s Opp'n to Accountant Defs.' Mot. Ex. 1, ECF No. 20-1.  It also is true that "when parties to a contract confer jurisdiction and venue on a particular court, as a general matter federal common law directs courts to favor enforcement of the agreement, so long as it is not unreasonable."  *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010).  A forum selection clause is unreasonable if

> (1) [its] formation was induced by fraud or over-reaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [its] enforcement would contravene a strong public policy of the forum state.

*Id.* at 651 (quoting *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (summarizing definition from *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972))).

Yet, "[a] general maxim in interpreting forum-selection clauses is that 'an agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion.'"  *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007) (quoting *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. & Distrp., Inc.*, 22 F.3d 51, 53 (2d Cir. 1994)).  In *IntraComm*, the Fourth Circuit observed that the forum selection clause at issue in that case provided that "either party shall be free to pursue its rights at

law or equity in a court of competent jurisdiction in Fairfax County, Virginia," and concluded that it was a permissive clause, differentiating it from the mandatory clause at issue in *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318 (10th Cir. 1997), which provided that "[j]urisdiction shall be in the state of Colorado." 492 F.3d at 290.

As in *IntraComm*, the clauses at issue in this case provide that the Borrower submits to the jurisdiction of Maryland's courts; they do not mandate that a dispute only may be litigated in Maryland. *See* Loan Agr. 1, at 5; Loan Agr. 2, at 5; Note 1, at 2; Note 2, at 2. Put another way, even if the forum selection clauses are enforceable, that does not mean that another court cannot have jurisdiction or that this Court cannot transfer the case to such a court pursuant to 28 U.S.C. § 1406(a). Notably, while this Court's long-arm jurisdiction does not extend to the Accountant Defendants, all of the Defendants would be subject to the jurisdiction of the United States District Court for the Eastern District of Virginia. Thus, § 1406(a) allows for a transfer to that court. *See* 28 U.S.C. § 1406(a). Moreover, it would be imprudent to litigate the case except where all of the alleged wrongdoers may be sued. Therefore, I will transfer this case to the United States District Court for the Eastern District of Virginia. *See id.*

## III.    THE UNIVERSITY'S MOTION TO DISMISS

Prior to transfer, I will consider the University's Motion to Dismiss, which also is pending before me, and for which this Court's jurisdiction is not at issue. Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the

Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider . . . documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011).

In addition to the negligence claim against the Accountant Defendants, Plaintiff's Amended Complaint includes two counts: Count I for breach of contract and Count II for negligence, both against the University and the Director Defendants. Am. Compl. ¶¶ 92–118. The University and the Director Defendants moved to dismiss both counts in their entirety, but in

their Reply, they concede that Plaintiff may have stated a claim for breach of contract against the University.  Univ.'s Reply 9.  Therefore, the University's Motion to Dismiss is DENIED IN PART as to the breach of contract claim against the University.

### A.  Breach of Contract – Director Defendants

A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract . . . ."  *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000) (quoting *Conn. Pizza, Inc. v. Bell Atl.-Wash., D.C., Inc.*, 193 B.R. 217, 225 (Bankr. D. Md. 1996) (quoting *Weiss v. Sheet Metal Fabricators, Inc.*, 110 A.2d 671, 675 (Md. 1955)) (quotation marks omitted)).[10]  A contract exists where there is "'mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'"  *Spaulding v. Wells Fargo Bank, N.A.*, No. 12-1973, 2013 WL 1694549, at *9 (4th Cir. Apr. 19, 2013) (quoting *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004)).

The Director Defendants insist that Plaintiff has not stated a claim for breach of contract against them because they were not parties to any of the Loan Documents.  Univ.'s Mem. 6.  It is true that "[t]he general rule in Maryland is that "'a person cannot be held liable under a contract to which he was not a party.'"  *Mowbray v. Zumot*, 533 F. Supp. 2d 554, 564 (D. Md. 2008) (quoting *Snider Bros., Inc. v. Heft*, 317 A.2d 848, 851 (1974)).  Yet, under the "'alter ego' doctrine," parties in control of a corporation may be held liable under a contract with the

---

[10] The Loan Documents provide that they "will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Maryland without regard to its conflicts of law provisions."  Loan Agr. 1, at 5; Loan Agr. 2, at 5; Note 1, at 2; Note 2, at 2.

corporation even if they are not a party to the contract. *See Hildreth v. Tidewater Equip. Co.*, 838 A.2d 1204, 1208, 1210 (Md. 2003).[11]

> [T]he "alter ego" doctrine has been applied "where the corporate entity has been used as a subterfuge and to observe it would work an injustice," the rationale being that "if the shareholders or the corporations themselves disregard the proper formalities of a corporation, then the law will do likewise as necessary to protect individual and corporate creditors." 1 William Meade Fletcher, *Fletcher cyclopedia of the Law of Private Corporations* § 41.10 at 574-76 (1999 Rev. Vol.). The doctrine, says Fletcher, is applied "with great caution and reluctance" and only in "exceptional circumstances." *Id.* at 579-80. Courts will apply the doctrine when the plaintiff shows (1) "complete domination, not only of the finances, but of policy and business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own," (2) that "such control [was] used by the defendant to commit fraud or wrong, to perpetrate the violation of the statutory or other positive legal duty, or dishonest and unjust act in contravention of the plaintiff's legal rights," and (3) that such "control and breach of duty proximately caused the injury or unjust loss." *Id.* at 583-86. Because piercing the corporate veil is founded on equity, "where no fraud is shown, the plaintiff must show that an inequitable result, involving fundamental unfairness, will result from a failure to disregard the corporate form." *Id.* at 605.
>
> Although there appears to be no universal rule as to the specific criteria that courts will consider in determining whether to apply the doctrine, Fletcher observes that some of the factors commonly considered, when dealing with a single corporation, are (1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records. *Id.* § 41.30 at 625-28.

*Hildreth*, 838 A.2d at 1210.

Plaintiff bases its breach of contract claim against the Director Defendants on the theory that the University and the Director Defendants "operate as alter egos." Pl.'s Opp'n to Univ.'s Mot. 4. In the Director Defendants' view, "[t]here is no conceivable basis for imposing personal

---

[11] Plaintiff applies Maryland law in its discussion of the alter ego doctrine, *see* Pl.'s Opp'n to Univ.'s Mot. 5, and, although the University and the Director Defendants challenge its applicability, they also apply Maryland law, *see* Univ.'s Reply 2. Moreover, as noted, Maryland law governs the Loan Documents. *See* Loan Agr. 1, at 5; Loan Agr. 2, at 5; Note 1, at 2; Note 2, at 2. Therefore, I will apply Maryland law.

liability on the individual defendants for the corporate debt on an alter ego theory," because "the individual defendants are not shareholders" and "there are no factual allegations that the corporation was used for an improper purpose, that corporate formalities were not followed, or that these individuals used the corporation as a sham for their personal benefit." Univ.'s Mem. 6–7; *see* Univ.'s Reply 2. Plaintiff argues to the contrary that it "has plead[ed] sufficient facts alleging an alter ego theory," such as that the University "is undercapitalized and operates without a profit" and "comingles assets with those of the Board Members," and the University and the Director Defendants have not "follow[ed] corporate formalities. Pl.'s Opp'n to Univ.'s Mot. 5. The Director Defendants maintain that Plaintiff's Amended Complaint is deficient because Plaintiff has not provided any "Maryland authority supporting the use of alter ego liability on a director or officer of a non-profit, membership corporation or an officer or director of a corporation who is not also a shareholder," Univ.'s Reply 2, or alleged that they "exercised complete control and domination over the University as if the University had no separate existence of its own," *id.* at 4–5.

Plaintiff does allege various misrepresentations: Plaintiff claims that "Feudo did not disclose to the Bank that he was the President and CEO of Secureant despite the Bank's inquiry as to the nature of Secureant's business," Am. Compl. ¶ 67; and the Director Defendants "negligently represented the value of the assets of the University to the Bank," *id.* at ¶ 84, and "did not disclose to the Bank that the purported 'grants' of income identified on its financial statements, upon which the Bank relied, came from undercapitalized entities related to the board of Directors and officers of the University," *id.* at ¶ 89. But, regardless whether the alter ego doctrine applies to a board member or director who is not also a shareholder, Plaintiff has not pleaded sufficiently the facts necessary to show that this is one of the "'exceptional

circumstances'" in which the Court should apply the alter ego doctrine.  *See Hildreth*, 838 A.2d at 1210 (citation omitted).  Of the factors identified in *Hildreth*, Plaintiff does not plead that the corporation "fails to observe corporate formalities, fails to issue stock or pay dividends"; that "there are non-functioning officers or directors"; that the University was insolvent when it entered into the Loan Documents; or that corporate records were missing.  *See id.*  Most significantly, Plaintiff does not allege that any of the Director Defendants, either individually or collectively, completely dominated the University in any respect.  *See id.* Rather, Plaintiff's one claim that the Director Defendants controlled the University is that they "utilized the University as a mere instrumentality, agency, conduit or adjunct to direct and control the University and *at times* directly asserted their control of the University . . . ."  ¶ 106 (emphasis added). Occasional control is a far cry from complete control and domination.  *See id.*  Therefore, the Director Defendants cannot be held liable for the University's alleged breach of contract under the alter ego theory.  The University's Motion to Dismiss is GRANTED IN PART as to the breach of contract claim against the Director Defendants.

## B.  Negligence

The University and the Director Defendants argue that Plaintiff fails to state a claim in negligence against any of them.  Univ.'s Mem. 7–9.  Their two-page analysis includes few case citations and does not include any discussion of governing law, the elements of negligence under that law, or an application of Plaintiff's factual allegations to those elements.  *See id.*  Therefore, the University's Motion to Dismiss is DENIED IN PART without prejudice to resubmission before the United States District Court for the Eastern District of Virginia, if that court so permits.

## IV.     CONCLUSION

In sum, the University's Motion to Dismiss is GRANTED IN PART as to the breach of contract claim against the Director Defendants, DENIED IN PART as to the breach of contract claim against the University, and DENIED IN PART without prejudice as to the negligence claim against the University and the Director Defendants; the Accountant Defendants' Motion to Dismiss is DENIED, and the case is TRANSFERRED to the United States District Court for the Eastern District of Virginia.  A separate order shall issue.

Dated: <u>January 30, 2014</u>                                 <u>            /S/                    </u>
                                                                               Paul W. Grimm
                                                                               United States District Judge
lyb